| | |
|---|---|
| Charles Murdock, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-62687-Civ-Scola |
| American Maritime Officers Union | ) |
| National Executive Board and Paul | ) |
| Doell, Defendants. | ) |

## Order

This matter is before the Court upon the Plaintiff Charles Murdock's emergency motion to reopen and for injunctive relief. For the reasons set forth below, the Court **denies** the relief sought in the Plaintiff's motion (**ECF No. 40**).

### 1. Background

On April 14, 2020, the Court entered an order staying this matter upon the Defendants' motion to dismiss, or in the alternative, to stay. In that order, the Court briefly recounted the allegations put forth by the Plaintiff, which the Court again recounts here. The Plaintiff is the Secretary-Treasurer of the American Maritime Officers Union ("AMO") and the Defendant, Paul Doell, is the union's national president. (ECF No. 34, at 1.) Doell and Murdock have disagreed on a number of issues, which resulted in Doell purportedly stripping Murdock of many of his constitutionally-defined duties as AMO's Secretary-Treasurer. (*Id.*) Murdock states that Doell's actions have allowed Doell to control AMO's finances without oversight. (*Id.*) After being stripped of his responsibilities, Murdock moved to reinstate his authority, but claims Doell stonewalled that request by delaying a national meeting and limiting the time Murdock had to present his motion. (*Id.*) Murdock's motion ultimately failed. Murdock was later re-elected as AMO's Secretary-Treasurer and thereafter, two challengers, one from a Doell faction of the AMO instituted union proceedings to overturn the election results. (*Id.* at 2) This effort failed and Murdock claims that Doell then began a campaign of harassment against him, including beginning disciplinary proceedings against him for allegedly assaulting Doell's assistant as retaliation for filing this lawsuit. (*Id.*)

After considering these allegations, the Court found the best course of action was to stay these proceedings as Murdock had failed to exhaust internal union remedies. (*Id.* at 3.) In particular, the Court noted that Murdock could file charges claiming Doell's stripping him of his duties violated AMO's

constitution or could file a suit for grievances of malfeasance or favoritism against Doell. (*Id.*) While Murdock argued exhaustion would be futile, the Court disagreed finding this argument to be conclusory and moreover, undercut by the fact that Murdock successfully won the January 2019 challenge by Doell to his re-election. (*Id.* at 3-4.)

Since the Court's order staying this matter, on May 5, 2020, Murdock filed impeachment charges against Doell and against the AMO's other executive board members for "acceding to [Doell's] unconstitutional abuse of power." (ECF No. 40, at 4.) On October 6, 2020, Doell was "acquitted" though a trial committee. (*Id.*) Murdock states that under the Article XXIII of the AMO Constitution, the trial committee's decision is not final until it is presented to AMO's membership at its next scheduled meeting and ratified by a majority vote. Murdock states this has not happened as Doell has cancelled every monthly membership meeting since March 2020, the onset of the COVID-19 pandemic. (*Id.*) The other executive board members were also acquitted by other trial committees, decisions which also need to be ratified. (*Id.* at 4-5.)

On January 27, 2021, AMO's Vice President of Inland Waters initiated impeachment charges against Murdock based on allegations of non-performance of his duties, and on May 3, 2021, a trial committee determined that Murdock "was so deficient in collecting union dues and initiation fees that he should be 'DISMISSED from his position as National Secretary Treasurer and BARRED from holding any office, position or employment in the AMO.'" (*Id.* at 5 (emphasis in original).) Murdock appealed the trial committee decision to the AMO national executive board, which included Doell and other of the board members who Murdock sought to have impeached. (*Id.* at 5-6.) The appellate committee affirmed the decision that Murdock be dismissed from his position and barred from holding any future positions with AMO. Murdock states this decision, as the decisions pertaining to Doell and the other national executive board members, requires "approval of a majority vote of the membership at the next scheduled membership meeting". (*Id.* at 6.)

Murdock notes that the AMO constitution requires the AMO to hold regular monthly membership meetings at the AMO's headquarters, but Doell has cancelled every meeting since March 2020 due to the COVID-19 pandemic. Following the lifting of pandemic meeting restrictions on May 3, 2021, an AMO monthly meeting was scheduled to be held at the AMO's headquarters on June 7, 2021 where the trial committee decision acquitting Doell and the other national executive board members of Murdock's impeachment charges and where the appellate panel's decision affirming the impeachment of Murdock would be presented to the AMO's membership for ratification of rejection. (*Id.* at 6-7.) Murdock states that he arranged for AMO's members to appear in person

to support his appeals and when Doell learned Murdock's supporters would be in attendance, Doell cancelled the meeting. (*Id.* at 7.) The Defendants disagree with this characterization.

Rather than allow Doell to cancel the required monthly meeting, Murdock, pursuant to his authority as Secretary-Treasurer, convened the June 7, 2021 membership meeting at the AMO headquarters, where he purports a quorum of members were present and that those members voted not to ratify the national executive board's decision ousting Murdock and disqualifying him from holding future office with the AMO. (*Id.*) Those present also voted to ratify the trial committee decision acquitting Doell and the other national executive board members of their impeachment charges. (*Id.*) Murdock states that this is the final step under the AMO constitution and he has now exhausted all internal AMO procedures and appeals.

Unsurprisingly, this saga does not end with a neat wrap-up of this dispute at the AMO's purported June 7, 2021 meeting. Murdock states that in lieu of the union's June 7 meeting, Doell hired "TrueBallot, the AMO election voting service, to conduct an electronic mail ballot referendum on ratification of the impeachment decisions" (i.e. those with respect to Doell and the other national executive board members and Murdock) with a voting period that is set to conclude on June 30, 2021. (*Id.* at 9.) Murdock states that he believes this referendum is "rigged" and "designed and likely to overturn the June 7, 2021 membership vote." (*Id.* at 1.) Murdock further states the AMO constitution does not allow Doell "to substitute an electronic referendum which does not allow participation by the wrongfully impeached officer, contains no voting safeguards, and provides insufficient notice and voting time for the membership." (*Id.* at 2.) Accordingly, Murdock asks the Court to enjoin the counting and announcement of the results of this online referendum.

Doell states that what Murdock is asking for is for "unprecedented relief; i.e. for a court order to halt a union membership vote." (ECF No. 43, at 4.) In response to Murdock's motion, the Defendants state that "[t]he decisions to cancel the June 7 membership meeting due to the dangers of COVID and instead hold a referendum vote on the futures of its nationally elected officers among those very people who elected them . . . are decisions arising from a fair and reasonable interpretation of the AMO constitution" that should not be disturbed by the Court. (*Id.* at 5.) Moreover, the Defendants state that Murdock has failed to show that a constitutional membership meeting occurred on June 7, 2021. (*Id.*)

## 2. Analysis

In order to obtain a preliminary injunction, a moving party must establish: (1) a substantial likelihood of success on the merits; (2) that an injunction is necessary to prevent irreparable harm; (3) that the injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) that an injunction will not harm the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). A preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Siegel v. LePore*, 120 F. Supp. 2d 1041, 1047 (S.D. Fla. 2000) (Middelbrooks, J.).

The Court has reviewed Murdock's motion and finds he has failed to satisfy the standard for issuance of a preliminary injunction. Specifically, the Court finds that the Plaintiff has failed to show that absent a preliminary injunction that he or other members of his union would suffer irreparable harm. The Plaintiff argues that if the Court does not enjoin the counting and announcement of the online votes on June 30 that both he and the union members who elected him will suffer harm. The Plaintiff argues that if the online vote proceeds, which the Plaintiff argues is invalid under the AMO constitution, and such vote invalidates the results of the alleged June 7, 2021 membership meeting, then "a portion of the AMO membership will be disenfranchised" which will adversely impact the AMO for years to come. (ECF No. 45, at 5.)

In support of his arguments the Plaintiff relies on *Sheet Metal Workers Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989). In *Lynn*, the Supreme Court held that there is the potential for a chilling effect on Title I free speech rights under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411, where an elected official is discharged from his duties. This was found to be the case where a union member, Edward Lynn, was elected to a 3-year term as a business representative of his union. *Lynn*, 388 U.S. at 349. In his capacity, he argued the union was overspending and urged the union's general president to place the union under a trusteeship, delegating to the trustee the ability to supervise and direct the affairs of the union, including the ability to suspend union officers, business managers, or business representatives. *Id.* at 350. After the trustee's appointment at Lynn's urging, the trustee recommended a dues increase was needed, though Lynn stated to the trustee that he would oppose any such increase unless the trustee committed to spending cuts by the union. *Id.* The dues increase was defeated by secret ballot following Lynn's opposition and thereafter, the trustee removed Lynn from his

position, specifically because of his resistance to the dues increase. *Id.* The Supreme Court noted removal of an officer under such circumstances, i.e. by another official such as the union's trustee, is likely to have a chilling effect on Title I free speech rights under the LMRDA. The Supreme Court stated that "not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him." *Id.* at 355. Moreover, such removal deprives the union members of being represented by the leader of their choice. *Id.*

Here, however, the situation is distinguishable from *Lynn*. The Plaintiff complains that his impeachment was rejected at an alleged June 7, 2021 meeting of the AMO but that decision could be overturned by the potential outcome of the June 30, 2021 online vote. The Court agrees with the Defendants that the fact that Murdock's fate will be determined by a vote of *AMO's members* is a critical difference between *Lynn* and the matter now before the Court. As noted by the Defendants, under the AMO constitution, if Murdock's impeachment is ratified or is rejected as a result of the June 30 vote, the union's members will not have been deprived of the ability to choose their leaders through voting—in fact it is the union's members and not another official who are doing the choosing. (ECF No. 43.)

Moreover, the Court finds the harm that the Plaintiff complains of to be speculative should the June 30 vote go forward. *Siegel v. LePore*, 234 F.3d 1163, 1176-77 (11th Cir. 2000). For instance, it is entirely possible that Murdock could prevail in the June 30 vote and remain in his position as Secretary-Treasurer. As the Court noted, in its order staying this matter, even though Murdock paints what is happening with his union as biased and one-sided, calling the vote "a rigged electronic referendum that is designed and likely to overturn the June 7, 2021 membership vote," the Court finds that complaint is conclusory and without basis. Prior to the Court entering its stay, Murdock similarly argued without any factual basis that union proceedings would be futile, because a "'kangaroo Trial Committee'" would deny his charges against Doell. (ECF No. 34, at 3.) In its stay order, the Court noted that the fact Murdock prevailed against Doell in the January 2019 election challenge cuts against his assertion that the union's proceedings are rigged or stacked against him. (*Id.* at 3-4.) Other than stating an online vote is not authorized by the union's constitution, Murdock has not shown how this online vote is "rigged" against him.

Further, Murdock complains that the he and his fellow union members will be irreparably harmed if the vote is allowed to go forward because Murdock argues the online vote is in violation of the AMO's constitution requiring in-person meetings. The Defendants argue, in turn, that Doell cancelled the

union's June 7, 2021 meeting, just as he had all other meetings during the pandemic due to health and safety concerns. (ECF No. 43, at 14.) The Defendants note that Doell, as union president under AMO's constitution, is required to take measurers to "protect the interests and further the welfare of this union and its members in all matters." (*Id.*) Accordingly, the Defendants argue that Doell was required to take member safety into account before holding a meeting that could expose hundreds of union members and their families to COVID-19. The Defendants state that, in crafting the June 30 vote, they relied on Article XXVII of the AMO's constitution, a savings clause, which allows the union's board to "suspend the operation of any invalid provision, where that provision is declared invalid or inoperative by operation of law or any Court of law" and "substitute a provision which meets the objection to its invalidity . . . in accord with the intent and purpose of the invalid provision." (*Id.* at 15.) In Doell's notice cancelling the June AMO meeting, which Murdock provided as an attachment to his motion (ECF No. 40-1, at 66), Doell noted that "many AMO members remain at work aboard vessels in what are referred to commonly as 'hot spots'" and that the U.S. Coast Guard stated in a May 2021 advisory that "'COVID-19 . . . continues to have significant impacts on the U.S. marine transportation system, the global shipping industry and on mariners themselves.'" Doell further stated in his cancellation notice that "[w]e do not want an AMO member who would be [at AMO's headquarters] for a membership meeting, or for other union business, falling ill while here and bringing the coronavirus home to their families or to their vessels – their homes away from home." (*Id.* at 67.) With this in mind, it appears that certain members of AMO's executive board, including Doell, have therefore concluded that AMO's saving clause applies because "travel and quarantine restrictions make membership meetings at National Headquarters in Dania Beach inoperative or contrary to law for many AMO members and such conditions hamper and discourage full access to and participation in membership meetings." (ECF No. 43, at 15.) Consistent with Article XXVII, the Defendants state they crafted the June 30 vote to allow the union's business to proceed and to facilitate the "AMO's constitutional democratic process." (*Id.* at 20.)

      As the Court noted in its order staying this matter, the Supreme Court has adopted a general policy not to unduly harass legitimate unionism, nor to unnecessarily interfere with the union's interest in internal governance. *See United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 109 (1959) (the union's right to adopt its own reasonable rules was designed "to assure that the amendment would not unduly harass and obstruct legitimate unionism"); *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 471 (1968) ("The legislative history shows that Congress weighed how best to legislate against

revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs"). Indeed, the interpretation of a union's constitution by a "union official or governing body will be accepted unless the interpretation is clearly unreasonable." *Reich v. Int'l Alliance of Theatrical Stage Emps.*, 32 F.3d 512, 515 n.6 (11th Cir. 1994). The Court does not find it unreasonable, given the state of the COVID-19 pandemic and the global footprint of the AMO's membership, for the AMO's constitution to have been interpreted to allow for the suspension of in-person meetings and the adoption of alternative procedures to effectuate the purpose of the constitution's in-person meeting requirement. With the above in mind, the Court finds Murdock has failed to show he or his union would suffer irreparable harm absent the Court entering a preliminary injunction.

### 3. Conclusion

As the Plaintiff has failed to show that he will be irreparably harmed absent the Court entering a preliminary injunction enjoining the counting and announcing of the results of the June 30 online election, the Court finds that a preliminary injunction is not warranted. Following the announcement of the June 30 election, the parties may seek further relief from the Court, as necessary, including reopening these proceedings. The Court therefore **denies** the Plaintiff's emergency motion.

**Done and ordered** at Miami, Florida, on June 30, 2021.

_____
Robert N. Scola, Jr.
United States District Judge