United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Charles Murdock, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-62687-Civ-Scola |
| American Maritime Officers Union | ) |
| National Executive Board and Paul | ) |
| Doell, Defendants. | ) |

### Order on Motion to Reopen and File Supplemental Complaint

This matter is before the Court upon the Plaintiff Charles Murdock's motion to reopen and motion for leave to file a first supplemental complaint (ECF No. 47.) The Defendants opposed the motion (ECF No. 50), and the Plaintiff filed a reply in support (ECF No. 53). For the reasons set forth below, the Court **grants** the Plaintiff's motion to reopen the case and **grants in part** the motion for leave to file a first supplemental complaint. (**ECF No. 47**.)

**1. Background**

While lacking the same stylized savagery, Murdock's allegations against his union colleagues could be summed up as Father Barry summed up the union bosses' violence in *On the Waterfront*—"that's a crucifixion." Indeed, Murdock alleges that the Defendants: "stripped" him of his title and duties, "smeared" him with "unsourced conspiracy theories," sought to "wrongfully arrest[]" him, and ultimately "rigged" an election to force him out. (*See* ECF No. 47-1 at ¶¶ 15, 29, 119, 129.) Rhetoric aside, Murdock alleges that since 2018, Paul Doell, the American Maritime Officers Union's National President, has targeted Murdock and campaigned to remove him from the Union. (ECF No. 47-1 at ¶¶ 2, 14–95.) Murdock was the elected Secretary-Treasurer of the Union; he was first elected in 2015, re-elected in 2018, but removed in June 2021. (*Id.* at ¶¶ 1, 96–97.)

While the parties are familiar with the facts, the Court will briefly review the facts as alleged in Murdock's supplemental complaint. Murdock's and Doell's disagreements, as two elected officers in the Union, go back to 2015. (*Id.* at ¶ 14.) But it was not until 2018 that Doell "stripped" Murdock of many of his constitutionally-defined duties,[1] justifying these actions on false statements concerning Murdock's job performance. (*Id.* at ¶¶ 15–16.) Following his 2018

---

[1] The Union is governed by a constitution, which has been filed at ECF No. 19-2 and which Murdock incorporated into his complaint by reference. (ECF No. 47-1 at ¶ 7.)

re-election, Murdock filed a resolution and formal request to reinstate his authority, but Doell, after initially stonewalling, gave Murdock twenty minutes to make his case before the National Executive Committee,[2] which then denied the request. (*Id.* at ¶¶ 19–24.)

While Murdock sought to reinstate his authority, Doell campaigned to "smear" Murdock. Doell issued statements that called into question the legitimacy of Murdock's 2018 re-election. (*Id.* at ¶¶ 27–29.) Doell proceeded to cut Murdock's compensation, restrict his physical and remote access to some Union property, prohibit the sharing of information with Murdock, and exclude Murdock from important correspondences. (*Id.* at ¶ 30.) Doell also went so far as to investigate a non-profit with which Murdock is actively involved. (*Id.* at ¶¶ 31–35.)

In light of the above, Murdock filed the current suit on October 28, 2019. (*Id.* at ¶ 36.) Shortly after, Murdock sought to share information concerning the suit with Union members, including by distributing copies of the complaint at a meeting in early November 2019. (*Id.* at ¶¶ 37–38.) At the meeting, Doell's assistant removed a box of the complaints, which prompted Murdock to follow the assistant and retrieve his box. (*Id.* at ¶¶ 39–40.) Doell and his assistant accused Murdock of grabbing the assistant in the process. (*Id.* at ¶¶ 41–47.) Doell called the police, and two sheriff's deputies arrived that night to investigate, although Murdock was not arrested or charged. (*Id.* at ¶¶ 43–45, 49.) Nonetheless, in December 2019, Doell's assistant filed "Charges and Specifications" against Murdock with the Union, alleging that Murdock "assaulted, battered and injured her" the previous month when he retrieved his box from her. (*Id.* at ¶ 46.)

The facts alleged in Murdock's initial and first amended complaint end in December 2019. (ECF Nos. 1, 13.) However, Murdock now adds supplemental allegations concerning events that have transpired since December 2019.

In February 2020, a Union trial committee found Murdock guilty on charges of assault and recommended that he be removed as a member. (ECF No. 47-1 at ¶ 55.) However, this decision was rejected by a majority of the Union members present at the March 2020 meeting. (*Id.* at ¶ 56.)

In May 2020, Murdock filed impeachment charges against Doell and the members of the National Executive Board (the "Board") (Mike Finnigan, Daniel Robichaux, Christian Spain, John Clemons, and Joseph Gremelsbacker). (*Id.* at

---

[2] The National Executive Committee is composed of the National President (Doell), the Secretary-Treasurer (Murdock), and the National Executive Vice President. (ECF No. 47-1 at ¶ 9.)

¶ 57.) A rotating trial committee of either two or three members (all from the Board) heard the impeachment charges and acquitted each. (*Id.* at ¶¶ 59–62.)

Even more impeachment charges followed in January 2021, when Robichaux filed charges against Murdock for nonfeasance, in alleged retaliation for Murdock's earlier speech detailed above. (*Id.* at ¶¶ 63–65.) Murdock's impeachment trial was held in March 2021, and the trial committee was comprised of Spain, Finnigan, and Clemons. (*Id.* at ¶ 69.) At trial, Murdock was in effect denied his counsel, and the trial committee refused to consider or order the production of certain financial records. (*Id.* at ¶ 70.) Moreover, Murdock alleges that the trial committee was biased—not only was the trial committee composed of individuals against whom Murdock had earlier filed impeachment charges, but some members of the trial committee communicated with Murdock's witnesses *ex parte* before the hearing. (*Id.* at ¶ 72.)

Murdock in particular believes that Clemons's bias was clear. Two months after the trial, Clemons wrote to Murdock, saying that Murdock was "caus[ing] chaos" and complaining that the National Executive Committee "ha[s] to hear your belly aching." (*Id.* at ¶ 72, Ex. B.) Clemons determined that Murdock was "a piece of fucking shit" and concluded his e-mail by telling Murdock, "fuck you and the horse you ro[de] in on." (*Id.* at Ex. B.)

Murdock was ultimately found guilty, and the Board affirmed the decision to impeach and dismiss Murdock as Secretary-Treasurer. (*Id.* at ¶¶ 74, 77.) However, as in Murdock's first adverse trial, a vote of the Union members is necessary to ratify any decision. Per the Union's constitution, the member ratification vote is required to take place at the next monthly Union meeting, which due to COVID restrictions was not scheduled to take place until June 7, 2021 at the Union headquarters. (*Id.* at ¶¶ 78–82.)

Later, Doell cancelled the June 7 membership meeting, citing COVID concerns. (*Id.* at ¶ 84.) Nonetheless, Murdock and other Union members allegedly constituting a quorum met on June 7, 2021 and took a vote that rejected ratification of Murdock's impeachment. (*Id.* at ¶ 91.) Doell and the Board in turn rejected the June 7 vote and created a remote ratification process to occur on June 30, 2021. (*Id.* at ¶¶ 92, 94, 96.) The Union members ratified the trial decision through the June 30, 2021 vote, and, as a consequence, Murdock has been removed from office and barred from holding office again. (*Id.* at ¶¶ 96–97.)

### 2. Legal Standard

Murdock's motion for leave to file a supplemental complaint is subject to the discretion of the Court. *See* Fed. R. Civ. P. 15(d). A court may deny leave to

supplement where the supplement would be futile. *See Campbell v. City of Trussville*, No. 2:19-cv-01739-CLM, 2021 WL 1610617, at *4 (N.D. Ala. Apr. 26, 2021) (citing *Laurie v. Ala. Court of Crim. Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001)). Supplemental pleadings are futile where the pleadings are "subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004)). Therefore, courts generally hold that where supplemental pleadings fail to state a claim under Rule 12(b)(6), those pleadings are futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 Moore's Federal Practice ¶ 15.08[4], at 15–81).

Both parties treated this motion as a motion to dismiss the entire complaint. (ECF No. 50 at 3; ECF No. 53 at 4.) Therefore, the Court will review the sufficiency of the complaint as supplemented under Rule 12(b)(6).

### 3. Analysis

As proposed in the supplemental complaint, Plaintiff brings nine causes of action, including seven claims under Title I of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411, and two breach-of-contract claims. Before the Court walks through each claim, a brief summary of Title I of the LMRDA, 29 U.S.C. § 411, would be helpful.

Title I is often called the "Bill of Rights of Members of Labor Organizations." *See Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 352 (1989). Indeed, Congress intended it to provide union members with rights "paralleling certain rights guaranteed by the Federal Constitution." *Id.* In essence, the gravamen of the statute is straightforward—"ensuring that unions are democratically governed and responsive to the will of their memberships." *Id.* (cleaned up). For this reason, the rights guaranteed by Title I seek to protect "rank-and-file members—not union officers or employees." *Finnegan v. Leu*, 456 U.S. 431, 436–37 (1982). Moreover, as much as Title I seeks to ensure a vibrant democracy within unions, Section 411 was also enacted with deference to the "well established[] policy against government interference with the internal affairs of unions." *Dolan v. Transp. Workers Union of Am.*, 746 F.2d 733, 739–40 (11th Cir. 1984); *Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1475 (9th Cir. 1992) ("Congress sought to provide certain basic and fundamental rights to union members, while at the same time avoiding undue judicial interference with the mechanics of union self-governance."). With this background in mind, the Court will address the legal sufficiency of each claim.

### A. Claims under 29 U.S.C. § 411(a)(1) (Counts 2 and 5)

Section 411(a)(1) guarantees all members of a labor organization "equal rights and privileges" to participate within the organization in certain enumerated ways. *See* 29 U.S.C. § 411(a)(1). In particular, the statute protects equal rights "to nominate candidates, to vote in elections or referendums . . . to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings," subject to "reasonable rules and regulations" in the organization's constitution or bylaws. *Id.*

Plainly, Section 411(a)(1) is "no more than a command that members . . . shall not be discriminated against" in union politics. *See Calhoon v. Harvey*, 379 U.S. 134, 139 (1964). Indeed, Section 411(a)(1) does not concern itself with the removal of officers if the officer's membership is not affected. *See Rutledge v. Aluminum, Brick and Clay Workers Int'l Union*, 737 F.2d 965, 968 (11th Cir. 1984); *see also Lux v. Blackman*, 546 F.2d 713, 716–17 (7th Cir. 1976) ("[Section 411(a)(1)] has nothing to do with the removal of officers, regardless of the nonregularity of their removal.").

Murdock's second cause of action alleges that the Defendants' stripping of his duties in 2018 constituted a "constructive discharge" and violated Section 411(a)(1) "because it nullifie[d] the results of a properly conducted election." (ECF No. 47-1 at ¶¶ 106, 108.) Similarly, Murdock's fifth cause of action alleges a violation of Section 411(a)(1) when the Defendants cancelled the June 7, 2021 membership meeting and substituted it with a remote vote to take place on June 30, 2021. (*Id.* at ¶ 123.)

First, Count 5 fails to state a claim. Murdock does not (and cannot) allege that Section 411(a)(1) guarantees any specific type of ratifying vote, whether remote or in person. Rather, Murdock merely protests that the June 30, 2021 vote was a "rushed and flawed recall election referendum process." (ECF No. 47-1 at ¶ 123.) But as Murdock has not alleged that Defendants discriminated against any class of union members in the June 30, 2021 vote, Count 5 cannot stand. *See Ackley*, 958 F.2d at 1473 (holding that there was no Section 411(a)(1) violation where all union members received "the same type and amount of information" and had "identical rights to speak"). While Murdock appears to believe that in-person deliberations are required, Section 411 does not "authorize the federal courts to determine in every case what procedures best ensure union democracy." *See id.* at 1478. In this case, as alleged, Union members received equal information and equal rights to vote in the June 30, 2021 ratification. Therefore, Section 411(a)(1) is satisfied.[3]

---

[3] It is worth noting that the June 30, 2021 remote election expanded Union members' access to the right to vote as compared to Murdock's June 7, 2021 vote. Murdock alleges that the

Second, Count 2 also does not state a claim. While Murdock alleges a campaign to undermine his re-election in 2018 and to constructively discharge him following that election (ECF No. 47-1 at ¶¶ 16, 108), Murdock does not allege—as he must—in what way the Defendants discriminated against any members' protected rights. *See generally Calhoon*, 379 U.S. at 139; *see also Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F. Supp. 2d 383, 393 (S.D.N.Y. 2002) ("[A] claim under Section [411(a)(1)] must 'allege the denial of some privilege or right to vote which the union has granted to others.'") (quoting *Members for a Better Union v. Bevona*, 152 F.3d 58, 65 (2d Cir. 1998)).

To the extent that Murdock alleges that the Defendants discriminated against his supporters, Murdock does not allege that this discrimination abridged his rights "to nominate candidates, to vote in elections or referendums . . . to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." *See* 29 U.S.C. § 411(a)(1); *see also Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 204–05 (D.C.D.C. 2011) (dismissing a claim under Section 411(a)(1) where the plaintiff did not allege that any member was discriminated against with respect to a right enumerated in Section 411(a)(1)). Murdock complains that the Defendants campaigned throughout 2018 and 2019 to undermine and strip him of authority, thus "constructively discharg[ing]" him and "nullif[ying] the results" of his 2018 re-election. (ECF No, 47-1 at ¶¶ 106, 108.) Murdock generally points to *Sheet Metal Workers' Int'l Ass'n v. Lynn*, which held that the removal of an officer, without a membership vote, denies members the representative of their choice. *See Lynn*, 488 U.S. at 355. But as Count 2 only alleges a "constructive discharge" in 2018 and 2019, Murdock was not actually discharged in a manner that implicates members' rights as recognized in *Lynn*. Moreover, Murdock's theory of liability would require a court to wade into union politics and determine under what circumstances any limitation of duties constitutes a "constructive discharge" in a manner violative of federal law. This is contrary to the well-established scope of 29 U.S.C. § 411, which

---

June 7, 2021 in-person vote was attended by "over 40 members," while it appears that 855 members voted in the June 30, 2021 remote vote. (ECF No. 47-1 at ¶ 129; ECF No. 50-1 at ¶ 11.) Murdock asserts that forty members is the "usual" size for an in-person meeting. (ECF No. 47-1 at ¶ 129.) Accepting that as true, it appears that such low in-person attendance is because the Union serves merchant marine officers, many of whom are at sea throughout the year. (*Id.* at ¶¶ 3, 85.) While it is not the Court's place to adjudicate the exact procedures to use, the Court does not believe democracy to be so fickle as to require in-person votes, particularly where many members may be at sea and cannot attend in-person events on dry land.

counsels "noninterference with unions' internal affairs."[4] *See Dolan*, 746 F.2d at 740. For these reasons, the Court dismisses Counts 2 and 5.

### B. Claims under 29 U.S.C. § 411(a)(2) (Counts 1 and 6)

Section 411(a)(2) protects the "freedom of speech and assembly" for union members, namely, "the right to meet and assemble freely with other members, and to express any views, arguments, or opinions; and to express at meetings . . . views, upon candidates in an election . . . or upon any business properly before the meeting." 29 U.S.C. 411(a)(2). These rights are subject to the union's right to "adopt and enforce reasonable rules." *Id.* Section 411(a)(2) assures that "union members are free to discuss union policies and criticize the leadership without fear of reprisal." *United Steelworkers v. Sadlowski*, 457 U.S. 102, 112 (1982).

Murdock's first cause of action alleges that the Defendants retaliated against him because of his speech in opposition to Doell. (ECF No. 47-1 at ¶ 100.) Murdock's sixth cause of action alleges that the Defendants illegally disregarded the June 7, 2021 vote and denied Murdock and other union members the "opportunity to communicate or deliberate about" the June 30, 2021 vote in retaliation for Murdock's protected speech against Doell and the Board. (*Id.* at ¶ 126.)

First, Count 6 fails to state a claim. Beyond conclusory allegations, Murdock alleges no facts as to Count 6 concerning how his and other members' rights to communicate and deliberate in advance of the June 30, 2021 vote were infringed. Rather, Murdock only complains that the June 30, 2021 referendum did not provide "adequate" information to members and did not provide members their "right to an informed in-person vote." (ECF No. 47-1 at ¶ 94; ECF No. 53 at 10 n.2.) However, Murdock provides no allegations that members were completely barred or chilled from discussing or deliberating, whether through virtual or in-person means. And Section 411(a)(2) does not mandate that any specific information be provided to members in advance of a vote, nor does it demand a right to in-person discussions. *See Rodriguez v. Serv. Emps. Int'l*, 755 F. Supp. 2d 1033, 1047 (N.D. Cal. 2010) (holding that "allegations that the union leadership did not provide adequate information for its members to make an informed decision, did not adequately publicize the place and time of the ratification vote and framed the choice in a manner that discouraged members from opposing ratification are not actionable under

---

[4] Without holding that a limitation of duties can never be brought under Section 411(a)(1), the Court notes that the limitations of Murdock's duties provoked additional Union discussion and deliberations, as Murdock alleges. (*See* ECF No. 47-1 at ¶¶ 19, 25, 37–38.) This is consistent with the at-times messy nature of Union democracy.

§ 411(a)(2)"); *see also Mallick v. Int'l Bhd. of Elec. Workers*, 749 F.2d 771, 786 (D.C. Cir. 1984) (holding that Section 411(a)(2) "simply does not guarantee access to all information a member might want to speak about.").

Moreover, Murdock has not alleged sufficient facts to support his claim that the Defendants ignored a valid vote of the membership on June 7, 2021. Rather, Murdock alleges that: because Defendant Doell had failed to pay his dues by February 22, 2021, and because the third member of the National Executive Committee died in March 2021, Murdock was the only member of the Committee in June 2021 and therefore he was permitted to chair a vote of the membership on June 7, 2021. (ECF No. 47-1 at ¶¶ 86–91.) Mindful of the Court's duty of "noninterference with unions' internal affairs," the Court cannot sanction Murdock's conclusory allegations that he was the only Committee member in good standing on June 7, 2021 and that therefore he was authorized to single-handedly preside over the ratification of his own impeachment. *See Dolan*, 746 F.2d at 740. In any event, Murdock only alleges that Doell was not in good standing as of February 22, 2021, not June 7, 2021. (ECF No. 47-1 at ¶ 88.) Absent allegations permitting an inference that the June 7, 2021 was a valid vote of the membership, Murdock has not alleged a claim that the Defendants ignored a valid membership vote in violation of Section 411(a)(2).

Last, contrary to Murdock's position, *Lynn* does not compel a different result. *See Lynn*, 488 U.S. at 347. As the Court stated in its June 30, 2021 order, *Lynn* is not applicable here, as the union members voted to ratify Murdock's impeachment on June 30, 2021. (ECF No. 46.) Therefore, union members here have not been "denied the representative of their choice" and there is no comparable chilling of speech as in *Lynn*; rather, members chose to ratify the impeachment of Murdock.[5] (ECF No. 47-1 at ¶ 96); *see Gilvin v. Fire*, 259 F.3d 749, 761 (D.C. Cir. 2001) ("Removing an officer by a vote of the union's membership . . . represents the *expression* of democracy, not its subversion.") (emphasis in original).

Second, as to Count 1, Murdock also fails to state a claim. Murdock alleges that the Defendants retaliated against his speech in opposition to the "stripping away" of his authority as Secretary-Treasurer. (ECF No. 47-1 at ¶ 100.) While the Eleventh Circuit has noted that "[a]ll speech by a member [or officer] is, in a sense, membership speech," the court in *Dolan* held that an

---

[5] However, the mere fact that union members ratified the impeachment of Murdock does not cure any alleged violations of Sections 411(a)(4) and 411(a)(5). While a vote by the members is the "expression of democracy," Murdock can and does allege that the process and intent behind the initial impeachment violated Sections 411(a)(4) and (a)(5). *See Gilvin*, 259 F.3d at 761.

officer's speech, if that speech "either advance[s] [the officer's] duties of office or interfere[s] with these duties," is not protected under Section 411(a)(2). *See Dolan*, 746 F.2d at 742; *cf. Finnegan*, 456 U.S. at 436–37 (holding that the rights guaranteed by Title I seek to protect "rank-and-file members—not union officers or employees"). The speech that Murdock alleges he made was speech in his capacity as an officer—he alleges that he: made a draft resolution and formal request to "reinstate his authority as the National Secretary-Treasurer"; he filed suit against the Defendants for their attempts to remove his authority as officer and spoke to members about his lawsuit; he filed impeachment charges against other officers for "stripping him of his duties as Secretary-Treasurer"; and he spoke out in support of and allegedly presided over a June 7, 2021 vote concerning his impeachment as an officer. (ECF No. 47-1 at ¶¶ 19, 36, 39, 57, 82, 91.) Therefore, as Murdock has not alleged that he engaged in membership speech—as opposed to speech as an officer—protected by Section 411(a)(2), Count 1 fails to state a claim.

### C. Claims under 29 U.S.C. § 411(a)(4) (Counts 4 and 7)

Section 411(a)(4) states that "[n]o labor organization shall limit the right of any member thereof to institute an action in any court[.]" 29 U.S.C. § 411(a)(4). Section 411(a)(4) "protects the right of a union member to sue and makes any prevention or impediment of this right a violation." *See Shivers v. Int'l Brotherhood of Elec. Workers Local Union 349*, No. 05-22238-Civ, 2006 WL 8433260, at *3 (S.D. Fla. Oct. 27, 2006) (Turnoff, MJ).

Murdock's fourth cause of action alleges that the Defendants retaliated against him in response to his filing of this action by attempting to have Murdock arrested and by filing internal grievances against Murdock for an alleged assault in 2018. (ECF No. 47-1 at ¶ 119.) Murdock's seventh cause of action similarly alleges that the Defendants retaliated in 2021 in response to Murdock's suit by unjustifiably and improperly impeaching him. (*Id.* at ¶ 129.)

First, Murdock adequately states a claim under Count 4. Section 411(a)(4), like the rest of Title I of the LMRDA, protects members' rights, not officers' entitlements. *See Local 115 United Bhd. of Carpenters and Joiners of Am. v. United Bhd. of Carpenters and Joiners of Am.*, 247 F. Supp. 660, 662 (D. Conn. 1965) ("It is the union-member relationship, not the union-officer relationship, that is protected.") (quoting *Sheridan v. United Bhd. of Carpenters and Joiners of Am., Local 626*, 306 F.2d 152, 157 (3d Cir. 1962)). Therefore, as *Dolan* recognized, the relevant inquiry is whether the action in question was taken as a member or as an officer. *See Dolan*, 746 F.2d at 742. Murdock alleges that he sued the Defendants in this Court in October 2019 and that, consequently, the Defendants engaged in a campaign to not only

remove him from his role, but also to interfere with his property and to accuse Murdock of unlawful behavior. (ECF No. 47-1 at ¶¶ 36–45.) Therefore, the Court holds that Murdock has adequately alleged Count 4, as he alleges: that he filed suit, that the Defendants retaliated against him, constituting an impediment to his protected right to sue, and that he was subsequently subjected to an adverse action, namely, false accusations of illegal conduct. *See Phillip v. Am. Fed. Gov't Emps. AFL-CIO*, No. 19-20122-Civ, 2019 WL 4540756, at *2 (S.D. Fla. Sept. 19, 2019) (Scola, J.) (setting forth the *prima facie* elements required to state a cause of action for retaliation under the LMRDA).

Similarly, Murdock has sufficiently stated a claim under Section 411(a)(4) as to Count 7. Count 7 alleges that the Defendants retaliated against Murdock by imposing a biased impeachment trial and improperly procured an "unconstitutional and rigged referendum" on June 30, 2021 to ratify the impeachment. (ECF No. 47-1 at ¶ 129.) Murdock traces these events back to his initial filing of this suit in 2019 and alleges that his impeachment and subsequent bar from running for office was in retaliation for his suit. (*See* ECF No. 47-1 at ¶¶ 54, 64, 129.) As discussed further below, a bar from running for office qualifies as a cognizable adverse action for purposes of alleging retaliation. *See Brittain v. Am. Fed. of Gov't Emps.*, No. 3:20-cv-92-TJC-PDB, 2021 WL 2315005, at *4 (M.D. Fla. June 7, 2021). Therefore, Murdock's Count 7 suffices to allege a claim for retaliation under Section 411(a)(4).[6]

### D. Claim under 29 U.S.C. § 411(a)(5) (Count 8)

Section 411(a)(5) provides members of a union certain "safeguards against improper disciplinary action" and requires that a member receive "written specific charges," a "reasonable time" to prepare a defense, and "a full and fair hearing" before the union acts to fine, suspend, expel, or otherwise discipline a member. *See* 29 U.S.C. § 411(a)(5). As with the other provisions discussed above, Section 411(a)(5) does not protect officers from suspension or removal as an officer, but it does apply to "disciplinary actions barring or suspending members from running for office." *Brittain*, 2021 WL 2315005, at *4.

---

[6] The Defendants argue that the new allegations relevant to Count 7 have not been heard by the "new NEB," of which the Defendant Doell remains the National President and which has three new members as of March 19, 2021. (ECF No. 47-1 at ¶¶ 2, 8; ECF No. 50 at 2 n.1.) The Defendants have provided no compelling reason why the Court should exercise its discretion to stay Count 7 or any other supplemental claim pending additional review by the Board. *See NLRB v. Indus. Union of Marine and Shipbuilding Workers of Am., AFL-CIO, Local 22*, 391 U.S. 418, 426 (1968) (holding that Section 411(a)(4) grants courts "discretion" to require union members to exhaust "reasonable hearing procedures" before proceeding in court).

Murdock's eighth cause of action alleges that the Defendants disciplined Murdock without due process by failing to provide written specific charges against him, denying him a "reasonable time" to prepare his defense at his impeachment trial, and conducting the impeachment trial without an unbiased decisionmaker. (ECF No. 47-1 at ¶ 132.)

While Murdock brings this claim for his removal from office, the effect of such removal is a bar from running for office. (ECF No. 47-1 at ¶¶ 74, 97; ECF No. 19-2 at 20.) Moreover, while Section 411(a)(5) does not guarantee the full panoply of due process protections that may apply elsewhere, it does guarantee "the right to produce evidence, the opportunity to confront witnesses and rebut evidence, and an unbiased tribunal." *Brittain*, 2021 WL 2315005, at *7 (quoting *Kent v. New York State Public Emps. Fed'n, AFL-CIO*, 1:17-CV-0268, 2020 WL 1531020, at *14 (N.D.N.Y. Mar. 31, 2020)). Murdock alleges that the impeachment tribunal was biased—indeed, Murdock's impeachment proceeding was heard by three officers (Spain, Finnigan, and Clemons), all of whom Murdock had earlier filed impeachment charges against and at least one of whom expressed an intense personal dislike of Murdock shortly after the trial. (ECF No. 47-1 at ¶¶ 57, 70, 74, Ex. B.) This is sufficient to state a claim under Section 411(a)(5) for Murdock's disciplinary process that now bars him, as a member, from running for office.

### E. Breach of Contract (Counts 3 and 9)

The Court notes that the Defendants did not raise any objection to Count 3, and the only objection that the Defendants raised to Count 9 concerned Murdock's failure to exhaust union proceedings in regard to the allegations underlying Count 9. However, as held above, the Defendants have given no compelling reason as to why the Court should exercise its discretion to stay Count 9 and require Murdock to go back to the union. *See NLRB*, 391 U.S. at 426. Therefore, Counts 3 and 9 may go forward.

### 4. Conclusion

In total, the Court **grants** the Plaintiff's motion to reopen the case and **grants in part** the Plaintiff's motion to file a supplemental complaint. (**ECF No. 47**.) The Plaintiff's complaint may proceed, but the Court dismisses Counts 1, 2, 5, and 6. The Court directs the Clerk to **reopen** this case. The Court orders the Defendants to answer the operative complaint by **November 16, 2021**. The Court further orders the parties to meet and confer and file a proposed scheduling report by **November 19, 2021**.

**Done and ordered** at Miami, Florida, on November 2, 2021.

_____
Robert N. Scola, Jr.
United States District Judge