United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Charles Murdock, Plaintiff,<br><br>v.<br><br>American Maritime Officers Union National Executive Board and Paul Doell, Defendants. | )<br>)<br>)<br>)  Civil Action No. 19-62687-Civ-Scola<br>)<br>)<br>)<br>) |

## Order

This matter is before the Court on the Defendant American Maritime Officers Union National Executive Board's motion to dismiss or, in the alternative, motion for judgment on the pleadings. (ECF No. 69.) Murdock filed a response in opposition to the motion (ECF No. 77), and the Board filed a reply in support (ECF No. 81). After careful consideration of the briefing, the record, and the applicable legal authorities, the Court **grants in part and denies in part** the Board's motion. (**ECF No. 69**.)

1. **Background**

As the parties are familiar with the background of this case, the Court will only discuss the relevant context. In this suit, Murdock, the former National Secretary-Treasurer of the American Maritime Officers Union (the "AMO"), sues Paul Doell (the National President of the AMO) and the AMO's Board. The AMO Constitution created the Board and provides that the Board will consist of a National President, National Secretary-Treasurer, National Executive Vice President, and four National Vice Presidents. (ECF No. 19-2 at 12 (art. 6, sec. 4(a).) The Board's authority is vast—it may "discuss and prepare reports and recommendations on any part of th[e] Union's activities, policies and plan," and through a majority vote of the Board, any recommendation may be adopted as binding AMO policy. (*Id.* (art. 6, sec. 4(c).)

In addition to creating the leadership structure of the AMO, the AMO Constitution also generally sets out rules and requirements for the union's membership. This includes setting dues rates, membership qualifications, and setting out rules for elections and impeachment proceedings. (*Id.* at 11, 12, 14, 19 (arts. 4, 5, 11, 23).)

In the instant motion, the Board moves to dismiss itself as a party to this case, arguing that the Board cannot be sued under the Labor Management Reporting and Disclosure Act ("LMRDA") or the Labor Management Relations Act ("LMRA") and that the relief that Murdock seeks cannot be provided by the Board. In support of these arguments, rather than fully briefing the issues in

one motion, the Board decided to "rel[y] upon and incorporate[] by reference" arguments made in two separate briefs previously filed with the Court. (ECF No. 69 at 1 (referring to ECF Nos. 61, 65).) The Court disapproves of this tactic. *See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) (noting that the practice of incorporating documents by reference forces courts "to skip over repetitive material, to recognize and disregard any arguments that are now irrelevant, and to harmonize the arguments [the party] has made at various stages of litigation" and noting that such a practice "makes a mockery of [court] rules governing page limitations and length") (internal citations and quotations omitted). However, given that the Board's motion is two pages, and the seemingly relevant portions of the two briefs "incorporated by reference" amount to five pages, the Court will consider the motion, as it appears to fit within the page limitations set by the Local Rules.[1]

Murdock primarily counters that the Board's motion is untimely, that the Board should be estopping from now asserting that it is not amenable to suit, and that the motion is duplicative of the Defendants' pending motion for summary judgment. (ECF No. 77.) Moreover, while Murdock did not expressly "incorporate by reference" additional arguments made in other briefings, the Court will also consider arguments that Murdock made in response to the briefing that the Board incorporated.

### 2. Legal Standard

The Board moved to dismiss pursuant to Rule 12(b)(6) and, in the alternative, moved for judgment on the pleadings under Rule 12(c). However, the Court believes that the question of whether the Board is liable under the LMRDA and LMRA is more appropriately a question of subject-matter jurisdiction.

In general, subject-matter jurisdiction refers to "prescriptions delineating the classes of cases a court may entertain." *Fort Bend Cnty., Tex. v. Davis*, 139 S.Ct. 1843, 1848 (2019). Because of the "[h]arsh consequences" that attend the branding of a dispute as jurisdictional (i.e., challenges to subject-matter jurisdiction may be raised at any time and may not be waived), the Supreme Court has warned of "profligate use of the term." *See id.* at 1848–49 (internal quotations and citations omitted). Therefore, in general, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should

---

[1] Seemingly in defense of this "incorporation by reference" tactic, the Board states that it only "filed the instant motion [because] it appears the Court requires a stand-alone motion to consider dismissal of the [Board]." (ECF No. 81 at 3.) The Court does not "require" anything. However, the Federal Rules provide that "[a] request for a court order must be made by motion." *See* Fed. R. Civ. P. 7(b). Therefore, to the extent that the Board wants a court order dismissing it from this case, the Federal Rules require a motion.

treat the restriction as nonjurisdictional in character." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).

Here, the LMRDA and the LMRA limit who may be sued: labor organizations and officers. *See* 29 U.S.C. §§ 411, 412; 29 U.S.C. § 185(a), (c). While not all statutory restrictions on an appropriate defendant will be deemed jurisdictional, the Supreme Court has held that congressional restrictions of jurisdiction "for claims against particular defendants" constitute restrictions of a court's subject-matter jurisdiction. *See Arbaugh*, 546 U.S. at 515 n.11. Therefore, multiple lower courts have recently treated the scope of the LMRDA as concerning subject-matter jurisdiction. *See Imagine This Future v. Spence*, No. 1:21-cv-00453, 2021 WL 1946500, at *1-2 (N.D.N.Y. May 14, 2021) (holding that the defendant was not a "labor organization" under the LMRDA and dismissing for lack of subject-matter jurisdiction); *Medford v. Civil Serv. Emps. Ass'n, Inc.*, 290 F. Supp. 3d 174, 181 (E.D.N.Y. 2017) (holding that the defendant was "not a 'labor organization' under the LMRDA and [was] not subject to the LMRDA" and dismissing for lack of subject-matter jurisdiction). Moreover, the Supreme Court has held that questions concerning the scope of the LMRA also constitute issues of subject-matter jurisdiction. *See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 98 (1991). Therefore, the Court will treat the Board's motion as one brought under Rule 12(b)(1).[2]

Attacks on subject-matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial challenges to subject-matter jurisdiction are based solely on the allegations in the complaint. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Thus, courts will "look at the face of the complaint and determine whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction." *Scelta v. Delicatssen Support Servs., Inc.*, No. 98-2578-CIV-T-17B, 1999 WL 1053121, at *4 (M.D. Fla. Oct. 7, 1999) (citations omitted). Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings," and courts will consider "matters outside the pleadings, such as testimony and affidavits." *See Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted).

---

[2] As the motion is properly one attacking the Court's subject-matter jurisdiction, the Board may raise it at any time and cannot waive it. *See Arbaugh*, 546 U.S. at 514. Nonetheless, even if the Court considered the Board's motion as one under Rule 12(c), the Court holds that the Board is not estopped from arguing that it is not liable to suit and that the motion is timely under Rule 12(c).

### 3. Analysis

Questions of the "scope of liability under a statute (*i.e.*, who may be sued)," are questions of statutory interpretation. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1166–67 & n.6 (11th Cir. 2003). Therefore, the Court must start where all cases of statutory interpretation start: "the language of the statute itself." *See Med. Transp. Mgmt. Corp. v. Comm'r of I.R.S.*, 506 F.3d 1364, 1367 (11th Cir. 2007) (quoting *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999)). Courts must decide whether the statutory language has a "plain and unambiguous meaning . . . determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *See id.* at 1367–68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997)). If the language is unambiguous, the inquiry ends. *See id.* However, if the statutory language is ambiguous—or "susceptible to more than one reasonable interpretation"—courts may use traditional "interpretative tools," such as "an examination of the act's purpose and of its legislative history." *See id.* at 1368 (citing *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1138 (11th Cir. 1990)); *United States v. Pringle*, 350 F.3d 1172, 1180 n.11 (11th Cir. 2003); *see also Shotz*, 344 F.3d at 1167 ("If 'the statutory language is not entirely transparent,' we employ traditional canons of construction before 'reverting to legislative history to assist us in determining the meaning of a particular statutory provision by focusing on the broader, statutory context.'") (cleaned up) (quoting *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001)).

Therefore, the Court will examine the text of both the LMRDA and the LMRA to determine whether Congress provided the Court with subject-matter jurisdiction over claims brought against the Board under either statutory scheme.

### A. Labor Management Reporting and Disclosure Act Claims

First, the Court looks to the text of Title I of the LMRDA. Murdock brings claims under 29 U.S.C. §§ 411(a)(4) and (a)(5), which protect union members' rights to institute actions against the union and its officers as well as members' rights to due process in disciplinary proceedings, respectively. *See* 29 U.S.C. § 411(a)(4) (providing that "[n]o labor organization shall limit the right of any member thereof to institute an action in any court"); 29 U.S.C. § 411(a)(5) (stating that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless" certain rights are provided). As courts have widely held, the LMRDA provides a cause of action against labor unions and officers of such unions. *See generally Urichuck v. Clark*, 689 F.2d 40, 42–43 (3d Cir. 1982); *Adamszemski v. Loc. Lodge 1487, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 496 F.2d 777, 780–81 (7th Cir.

1974) (noting that union members have a "right to bring a suit against a union and its officers" pursuant to 29 U.S.C. §§ 411 *et seq.*).

If plaintiffs can sue labor unions and officers under the LMRDA, whether a union's executive board can be sued depends on how broadly those terms are defined. The Act defines "officer" to include "any member of [a labor organization's] executive board or similar governing body." *See* 29 U.S.C. § 402(n). Labor union, or "labor organization," is defined as an organization "engaged in an industry affecting commerce . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning . . . terms or conditions of employment[.]" 29 U.S.C. § 402(i). Reviewing these definitions, the Act makes clear that suits against individual members of an executive board are cognizable, but it does not address whether suits against such a governing body itself may be brought or whether a union's executive board may fall within the definition of labor organization. Therefore, as the text of the statute does not resolve this question, the statute is ambiguous.

Next, the Court will look to the purpose of the statute. The LMRDA was passed to "eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives" and to provide "enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution." *See* 29 U.S.C. § 401(c); *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 352 (1989). Cognizant of this remedial scheme, and given the expansive language used, courts construe the LMRDA to apply "broadly to include all labor organizations of any kind other than those clearly shown to be outside the scope of the Act." *See Roddy v. United Transp. Union*, 479 F. Supp. 57, 60 (N.D. Ala. 1979) (quoting 29 C.F.R. § 451.2). In other words, the LMRDA's purpose is expansive.

Next, the Court will look to the appropriate context, namely, the structure of the AMO. It is axiomatic that a union acts through its officers. *See generally Williams v. Yellow Cab Co. of Pittsburgh, Pa.*, 200 F.2d 302, 305 (3d Cir. 1952) ("In exercising its powers to bargain collectively for its members[,] as in all its other activities on their behalf[,] a labor union acts, through its authorized officers, as agent of the entire membership within the authorities conferred by its constitution and bylaws."). And in the AMO, the national officers may act through the Board. (*See* ECF No. 19-2 at 12 (art. 6, sec. 4(c).) The Board formulates policy (*id.*), accepts members (*id.* at 19 (art. 22, sec. 9)), designates a trial committee to hear impeachment proceedings (*id.* at 19 (art. 23, sec. 2), and hears appeals of and approves or rejects the outcome of such disciplinary proceedings (*id.* at 20 (art. 23, sec. 6)).

Considering the remedial purpose of the LMRDA, the broad construction given to its scope, and the structure and authority of the Board, the Court

finds that suits against the Board are cognizable under the LMRDA. As the LMRDA states, it is intended to "eliminate or prevent improper practices on the part of labor organizations . . . and their officers and representatives." *See* 29 U.S.C. § 401(c). The rights protected in the LMRDA would be meaningless if a union or a group of officers could act unlawfully through an executive board yet potentially avoid liability. Therefore, the Court holds that suits against internal executive boards composed solely of union officials fall within the scope of the LMRDA.

The cases that the Board cites do not compel a different result. (ECF No. 61 at 11.) First, in *Maurer*, the District Court for the Southern District of California held that the plaintiff had failed to "allege[] or establish[]" that a "joint apprentice committee under a collective bargaining agreement" was a labor organization under the LMRDA. *See Maurer v. Int'l Bhd. of Elec. Workers, Loc. 569, AFL-CIO*, 200 F. Supp. 3d 1052, 1054, 1059 (S.D. Cal. 2016). However, this result was based on the deficiencies of the plaintiff's pleading; the court noted that it was provided with no legal authorities that conclusively showed that such committees were "not labor organizations as a matter of law." *See id.* at 1058. Therefore, *Maurer*'s holding is of little value here.

The Board also cites to *Mayhew*, which held that a union's joint seniority board was not a labor organization under the LMRDA. *See Mayhew v. ILA Loc. 1771 (Clerks & Checkers)*, No. C.A.2-05-01558-PMD, 2005 WL 3055597, at *5 (D.S.C. Nov. 15, 2005). There, the joint seniority board, which was created via a collective bargaining agreement, was composed of union and employer representatives to address the hiring and firing of employees. *See id.* at *5. The court held that the joint seniority board could not constitute a labor organization under the LMRDA as it was "not merely a board of employees subordinate" to a union but rather a board "made up of members of two separate entities," including an employer association. *See id.* Therefore, *Mayhew* at most stands for the proposition that a board or committee that consists of both union members and employer representatives cannot be sued under the LMRDA. *See id.*; *see also Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1066 (5th Cir. 1980) (holding that an apprenticeship committee was not a labor organization under the LMRDA as it had "a legal identity separate from any union" and was "a managing committee appointed in equal numbers by management and labor").

As the Board is merely an internal governing body subordinate to the AMO and is only composed of union officers, the Court holds that LMRDA claims extend to the Board. Therefore, the Court denies the Board's motion to dismiss Murdock's LMRDA claims.

### B. Labor Management Relations Act Claims

Second, the Board argues that it is not amenable to suit under the LMRA. Murdock brings two claims for breach of contract, arguing that the Defendants breached the AMO Constitution by "stripping Mr. Murdock of his constitutionally defined duties" and by creating a modified process through which the AMO membership ratified Murdock's impeachment. (ECF No. 47-1 at ¶¶ 114, 137.) While the operative complaint does not specify whether these claims are brought under state or federal law, Murdock has previously represented that they are brought pursuant to the LMRA. (*See* ECF No. 30 at 5; ECF No. 53 at 6.) Murdock now argues that these claims are cognizable under the LMRA, but in the alternative Murdock asks the Court to exercise supplemental jurisdiction to the extent that these claims arise under state law.

#### *1. LMRA Jurisdiction*

Most claims regarding the breach of a labor agreement must arise under section 301 of the LMRA, 29 U.S.C. § 185. *See Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 857–58 (1987) ("[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law[.]") (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Therefore, section 301 preempts any state-law claims where the court "must consult and interpret the contract at issue to resolve the issues before it." *See Int'l Union, Security, Police and Fire Pros. of Am. v. United Gov't*, No. Civ.A.04-2242-KHV, 2004 WL 3019430, at *6 (D. Kan. Dec. 30, 2004) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988)); *see also Pruitt v. Carpenters' Loc. Union No. 225 of United Bhd. of Carpenters and Joiners of Am.*, 893 F.2d 1216, 1219 (11th Cir. 1990) (holding that section 301 preempts claims brought by union members alleging breach of a union constitution).

However, such claims are only preempted if the contract at issue falls within those governed by section 301. *See Madsen v. Am. Fed'n. of Musicians of the U.S. and Canada, AFL-CIO, Loc. 24*, 13 F. Supp. 3d 820, 824 (N.D. Ohio 2014). Therefore, regardless of the legal source of Murdock's contract claims, the Court must first determine whether the AMO Constitution is a "contract[] between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations," such that section 301 applies. *See id.* (quoting 29 U.S.C. § 185(a)).

Typically, section 301 suits are between a local union and an international union, but in what has been deemed a "creative use of the federal labor laws," union members may sue a union—as a third-party beneficiary—for breach "to enforce promises made to [the union] allegedly for the [member's]

benefit." *See Hechler v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 834 F.2d 942, 943–44 (11th Cir. 1987). Because union constitutions are "an important form of contract," these third-party beneficiary suits may allege breach of a union constitution. *See Wooddell*, 502 U.S. at 101, 103; *see also Lydon v. Loc. 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 54 (1st Cir. 2014) ("[Union] members can sue to enforce the contract/constitution as third-party beneficiaries.") (citing *Wooddell*, 502 U.S. at 100–01). However, union members may only bring a section 301 claim against a local union if they allege breach of a constitution between an international union and a local union. *See Korzen v. Loc. Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996) (holding that "an international's constitution is a contract between the international and its locals" under section 301); *cf.* James E. Pfander, *Federal Jurisdiction Over Union Constitutions After* Wooddell, 37 Vill. L. Rev. 443, 450 (1992) (arguing that section 301 claims should only extend to "those claims that implicate the parent-local relationship"). Union members may not bring a section 301 claim for an alleged breach of a local union's constitution, as such a constitution is merely a "contract between the union and its members." *See Korzen*, 75 F.3d at 288 ("A suit on a [local constitution] between a labor organization and a member is not within the scope of section 301.").

Murdock argues that the AMO Constitution is between a local union (the AMO) and an international union (the Seafarers International Union of North America, AFL-CIO ("SIUNA")). (ECF No. 75 at 7.) The AMO Constitution contains limited references of an "affiliation" with the SIUNA, which Murdock argues are "clearly indicative of a contractual arrangement" between the two unions. (*See id.*; ECF No. 19-2 at 11, 20.) But regardless of what contractual arrangement exists between the AMO and the SIUNA, Murdock asserts breach of the AMO Constitution, which governs the relationship between the AMO and its members. The AMO Constitution sets out membership requirements, membership dues rates, and election and impeachment proceedings, among other things. (*Id.* at 11, 12, 14, 19 (arts. 4, 5, 11, 23).) As the AMO Constitution is a contract between the AMO and its members, and not between the AMO and an employer or international union, any claim concerning the AMO Constitution is not cognizable under section 301. *See Kitmann v. Loc. 619-M Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters*, 415 F. App'x 714, 719–20 (6th Cir. 2011) (holding that only international union constitutions and an affiliation agreement between unions fell within section 301); *Korzen*, 75 F.3d at 288.

Therefore, as Murdock's Counts 3 and 9 do not satisfy the LMRA's conferral of federal jurisdiction, the Court dismisses these claims.

### *2. Supplemental Jurisdiction*

To the extent that Murdock argues—and is not estopped from arguing—that these claims were brought under state law, the Court declines to exercise supplemental jurisdiction over these claims. Where a court has federal-question jurisdiction over some claims, state-law claims fall within a court's supplemental jurisdiction if those claims "derive from a common nucleus of operative fact." *See Henley v. Payne*, 945 F.3d 1320, 1329 (11th Cir. 2019) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)); *see also Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (holding that courts must look to whether the state-law claims "arise from the same facts, or involve similar occurrences, witnesses or evidence"). But courts may decline supplemental jurisdiction over state-law claims if: (1) those claims raise a "novel or complex issue of State law"; (2) those claims "substantially predominate[]" over any federal claims; (3) the court dismissed all federal claims; or (4) in "exceptional circumstances, there are other compelling reasons[.]" *See* 28 U.S.C. § 1367(c).

Murdock's Count 3 alleges that the Defendants breached the AMO Constitution by allegedly removing certain duties from Murdock's purview in 2018 to "undermine" Murdock's 2018 election. (ECF No. 47-1 at ¶¶ 15–18.) However, the only other claims that remain in this matter largely concern the Defendants' alleged retaliation campaign in 2019 and the later impeachment proceedings against Murdock. (*See* ECF No. 54.) As Count 3 involves factual allegations that are no longer at issue in the remaining counts, there is no supplemental jurisdiction over Count 3. *See Hudson*, 90 F.3d at 455.

Murdock's Count 9 alleges that the Defendants failed to abide by the impeachment ratification provisions of the AMO Constitution when Murdock's impeachment was ratified by a vote of the membership. (ECF No. 47-1 at ¶ 137.) Such claims involving "internal union disputes" between a local union, its constitution, and its members "lie within the traditional competence of state courts." *See* Pfander, *Federal Jurisdiction Over Union Constitutions After Wooddell*, 37 Vill. L. Rev. at 450; *cf. Wirtz v. Loc. 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470–71 (1968) (noting a "long-standing policy against unnecessary [federal] intrusion into internal union affairs"). Therefore, as Count 9 primarily implicates state interests in the internal operation of the AMO vis-à-vis its members, the Court declines to exercise supplemental jurisdiction.

Therefore, Murdock cannot bring his breach-of-contract claims under the LMRA, and to the extent these claims are brought under state law, the Court declines to exercise supplemental jurisdiction.

**4. Conclusion**

For the reasons set out above, the Court **grants in part and denies in part** the Board's motion. (**ECF No. 69**.) Murdock's claims against the Board under the LMRDA may proceed, but the Court dismisses Murdock's claims brought under the LMRA for lack of jurisdiction.

**Done and ordered**, in Miami, Florida, on July 12, 2022.

Robert N. Scola, Jr.
United States District Judge